IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| HONG CHRIS LU, | CASE NO. 1:25-cv-1057 |
| Plaintiff, | |
| vs. | MAGISTRATE JUDGE JAMES E. GRIMES JR. |
| CAPITAL ONE, N.A., *et al.*, | |
| Defendants. | **MEMORANDUM OPINION AND ORDER** |

Pro se plaintiff Hong Chris Lu filed a five-count complaint against Defendant Capital One, N.A., and Defendant HP, Inc., stemming from a dispute about a computer that Lu purchased from HP using his Capital One credit card. Capital One has filed under Federal Civil Procedure Rule 12(c) a Motion for Judgment on the Pleadings, Doc. 18, which Lu opposes, Doc. 22. After Capital One filed its Motion, Lu timely filed a Motion for leave to file a First Amended Complaint, Doc. 23, which is unopposed.[1] For the reasons explained below, I grant in part and deny in part Capital One's Motion, and grant in part and deny in part Lu's Motion.

---

[1]     Under the Case Management Schedule, Lu's motion for leave to amend his complaint was filed on August 28, 2025, and any opposition was due seven calendar days later. *See* Doc. 15, at 2. Capital One did not file an opposition within seven days of that date or seek leave to file a late opposition. So the motion is unopposed.

**Background facts**[2]

On May 28, 2023, Lu purchased a computer from HP through HP's website using his Capital One credit card. Doc. 1-1, at 5, ¶10. HP delivered the computer to Lu's home. *Id*. Lu turned the computer on but "it was defective, displaying no image whatsoever when powered on." *Id*. at ¶11. That day, Lu contacted HP's technical support personnel, who ran a two-hour diagnostics scan on the computer and "determined that the graphics card was defective." *Id*. at 5–6, ¶12. HP issued a replacement order. *Id*. at 6, ¶13.

After about three weeks, Lu hadn't received "the promised replacement," so he wrote to HP's CEO. *Id*. at ¶14. An HP Store Escalation Manager emailed Lu and stated that he would email Lu "an Express Exchange Form to sign and that he would send the replacement computer in a[n] express way." *Id*. at ¶15. HP never sent the replacement computer and "continued to ignore the issue." *Id*. at ¶16. So Lu contacted Capital One and disputed the charge on his credit card. *Id*.

As a result, a Capital One "fraud detection employee" conducted a 90-minute call with various HP departments and "confirmed with HP representatives that the computer was indeed defective and documented this

---

[2]     The background facts are taken from Lu's Complaint. In his proposed First Amended Complaint, Lu modifies some of the background facts to indicate whether he or his adult son Michael took the actions recited in the Complaint. *See* Doc. 23, Doc. 23-1. These new facts are not relevant to the legal discussions herein. For convenience, I recite the facts as Lu alleged them in his Complaint.

in Capital One's system." *Id*. at ¶17. The Capital One employee "assured [Lu] that HP would replace the defective computer and that Capital One would protect [Lu's] rights regarding the disputed charge." *Id*.

Nevertheless, on July 20, 2023, Lu received from Capital One a letter "falsely stating that 'goods were as described and received in good condition.'" *Id*. at ¶18. Capital One "began charging payments, late fees, and interest on the disputed amount." *Id*. at ¶19. Lu alleges that Capital One disregarded evidence and that its credit card "prominently advertises fraud protection but failed to provide this protection in [Lu's] case despite clear evidence of a defective product." *Id*. at 7, ¶20(b),(c). On October 7, 2024, Capital One hired a debt collector and filed a collection action against Lu in state court for the disputed amount. *Id*. at ¶25.

Lu's Complaint alleges that Capital One violated the Ohio Consumer Sales Practices Act (OCSPA), the Fair Credit Billing Act (FCBA), the Truth in Lending Act (TILA), and the Fair Debt Collection Practices Act (FDCPA). Doc. 1-1, at 4–11. In its Motion, Capital One argues that Lu's Complaint fails to state a claim for relief on the OCSPA, FCBA, and FDCPA claims and that the FCBA and the TILA claims are barred by the one-year statute of limitations.

**Legal Standard**

*Rule 12(c) standard*

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A court

evaluates a Rule 12(c) motion "using the same standard that applies to … a motion to dismiss under Rule 12(b)(6)." *Moore v. Hiram Twp., Ohio*, 988 F.3d 353, 357 (6th Cir. 2021). A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "When ruling on a defendant's motion to dismiss on the pleadings, a district court 'must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief.'" *Barber v. Charter Twp. of Springfield, Michigan*, 31 F.4th 382, 386–87 (6th Cir. 2022) (quoting *Engler v. Arnold*, 862 F.3d 571, 574–75 (6th Cir. 2017)); *see United Food & Com. Workers, Loc. 1995 v. Kroger Co.*, 51 F.4th 197, 202 (6th Cir. 2022) (courts "will not blindly accept legal conclusions nor draw unwarranted factual inferences from either the complaint or the answer.") (citing *Barber*, 31 F.4th at 387).

In addition to reviewing the allegations in the complaint and attached exhibits, a court "may consider … public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

*Rule 15 standard*

Federal Rule of Civil Procedure 15(a)(2) provides that a court should freely give leave to a party to amend a complaint "when justice so requires." But a court may deny a party leave to amend under a number of circumstances, including bad faith, undue delay, dilatory motives, undue prejudice to the opposing party, repeated failure to cure deficiencies in prior amendments, and futility. *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 458 (6th Cir. 2013), *abrogated on other grounds by Obduskey v. McCarthy & Holthus LLP*, 586 U.S. 466, 139 (2019); *see Foman v. Davis*, 371 U.S. 178, 182 (1962).

**Analysis**

*1. Lu has failed to state a claim against Capital One under the Ohio Consumer Sales Practices Act*

In count one of his Complaint, Lu alleges that Capital One violated the Ohio Consumer Sales Practices Act, Ohio Revised Code § 1345 *et seq*. Doc. 1-1, at 7–8. This statute "prohibits a covered 'supplier' from committing unfair or deceptive acts concerning a consumer transaction." *Lee v. Javitch, Block & Rathbone, LLP*, 484 F. Supp. 2d 816, 821 (S.D. Ohio 2007). Capital One argues that the Act doesn't apply to financial institutions like Capital One. Doc. 18, at 3.

To state a claim for relief under the Ohio Consumer Sales Practices Act, Lu must allege that he engaged in a "consumer transaction" with a "supplier" as the Act defines these terms. *See, e.g., Midland Funding LLC v. Brent*, 644 F. Supp. 2d 961, 976 (N.D. Ohio 2009), *modified on reconsideration on other*

*grounds*, No. 08-cv-1434, 2009 WL 3086560 (N.D. Ohio Sept. 23, 2009); Ohio Rev. Code § 1345.01 (defining terms). But the Act omits financial institutions from the definition of "consumer transaction." *See* Ohio Rev. Code § 1345.01(A) (omitting from *consumer transaction*s those between defined entities in Ohio Revised Code §§ 4905.03 and 5725.01 and their customers); Ohio Rev. Code § 5725.01(A)(1), (3) (listing "[f]inancial institution," defined as "[a] national bank organized and existing as a national bank association pursuant to the 'National Bank Act,' 12 U.S.C. 21" and "[a] bank, banking association, … or other banking institution that is incorporated or organized under the laws of any state"); *see also Reagans v. MountainHigh Coachworks, Inc.*, 881 N.E.2d 245, 253 (Ohio 2008) ("As a general matter, transactions between financial institutions and their customers are exempted from the definition of a 'consumer transaction' subject to the Consumer Sales Practices Act."); *Lee*, 484 F. Supp. 2d at 821.[3]

Here, Lu alleges in the Complaint that Capital One is a "national banking association." Doc. 1-1, at 5, ¶7; *see also* Doc. 23-1, at 3 ¶7 (Lu's proposed First Amended Complaint). So Lu's transaction with Capital One is exempt from the Ohio Consumer Sales Practices Act. *See* Ohio Rev. Code §§ 1345.01(A), 5725.01 (A)(1),(3). Lu has not advanced an alternative argument

---

[3]     The court in *Lee* explained that "[t]he Ohio Legislature specifically exempted financial institutions from this statute, likely in recognition of the fact that banks are heavily regulated by other statutes and codes." *Lee v. Javitch, Block & Rathbone, LLP*, 522 F. Supp. 2d 945, 956 (S.D. Ohio 2007).

in his opposition brief. Capital One's motion for judgment on the pleadings is therefore granted as to this claim. *See Barber*, 31 F.4th at 386 (dismissal of a claim is warranted when the plaintiff "can prove no set of facts in support of his claim that would entitle him to relief."). And Lu's motion for leave to amend his complaint is denied as to this claim.[4] *See Glazer*, 704 F.3d at 458 (a motion to amend complaint is appropriately denied when the proposed amendment would be futile).

2. *Lu has failed to state a claim against Capital One under the Fair Debt Collection Practices Act*

In count five, Lu alleges that Capital One violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. Doc. 1-1, at 10. This Act prohibits debt collectors from engaging in harassing, oppressive, or abusive actions "in connection with the collection of a debt." 15 U.S.C. § 1692d. Capital One argues that the Act applies only to debt collectors, not creditors like Capital One. Doc. 18, at 9.

The Fair Debt Collection Practices Act does not apply to creditors. It only applies to debt collectors. *Montgomery v. Huntington Bank*, 346 F.3d 693, 699 (6th Cir. 2003) ("To this, the federal courts are in agreement: A bank that is 'a creditor is not a debt collector for the purposes of the FDCPA and creditors are not subject to the FDCPA when collecting their accounts.'") (citations

---

[4]     Most if not all of the changes in Lu's proposed amended complaint add background facts to address an issue that HP raised about the proper plaintiff. *See* Doc. 23, at 2–3; Doc. 23-1, at 1–12. The allegations describing the violations in all five counts remain the same. Doc. 23-1, at 6–11.

omitted). The Act defines a creditor as "any person who offers or extends credit creating a debt or to whom a debt is owed." 15 U.S.C. § 1692a(4). This describes Capital One; Capital One extended credit to Lu, creating a debt by Lu to Capital One. So Capital One is a creditor. *See Barnes v. Capital One Fin. Corp.*, No. 1:23-cv-182, 2023 WL 6606026, at *3 (S.D. Ohio Oct. 10, 2023) ("A financial institution like Capital One that issues a credit card on which it seeks to collect payment is a 'creditor' and not a 'debt collector' under the FDCPA."), *report and recommendation adopted,* 2023 WL 9271174 (S.D. Ohio Oct. 30, 2023); *see also Saunders v. Capital One Bank (USA), N.A.*, No. 8:18-cv-3222, 2019 WL 2869655, at *5 (D. Md. July 3, 2019) (dismissing the plaintiff's FDCPA claim against Capital One Bank because Capital One is not a "debt collector" under the act) (colleting cases). Lu's Fair Debt Collection Practices Act claim against Capital One fails as a matter of law because Capital One is not a *debt collector* subject to liability under the Act.

Lu submits that Capital One hired a debt collector to initiate a lawsuit to collect its debt. Doc. 19, at 3–4. But this does not change the fact that Capital One is not itself a *debt collector* under the Act. Moreover, the Sixth Circuit has held that a creditor who hires a debt collector is not vicariously liable for acts of the debt collector. *See Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 108 (6th Cir. 1996); *Sterling v. Meade & Assocs.*, No. 3:24-cv-2063, 2025 WL 1295147, at *3 (N.D. Ohio May 5, 2025). And Lu has not and cannot cure this deficiency in his claim against Capital One in his proposed Amended

8

Complaint. Lu's Fair Debt Collection Practices Act claim against Capital One therefore fails as a matter of law, and Capital One's motion for judgment on the pleadings is granted as to this claim. *See Barber*, 31 F.4th at 386. Lu's motion for leave to amend his complaint is denied as to this claim. *See Glazer*, 704 F.3d at 458.

> *3. Capital One has not shown that it is entitled to dismissal of all of Lu's Fair Credit Billing Act allegations*

In count two, Lu alleges that Capital One violated the Fair Credit Billing Act, 15 U.S.C. § 1666 *et seq*. Doc. 1-1, at 8–9. Capital One argues that Lu has failed to state a claim against it and that any claim is barred by the one-year statute of limitations. Doc. 18, at 4–8.

> *a.  Lu has sufficiently alleged a billing error*

First, Lu has sufficiently alleged a Fair Credit Billing Act claim against Capital One. "The FCBA and its implementing regulations (Regulation Z), 12 C.F.R. §§ 226.1 *et seq*., 'set forth the procedures to be followed when a creditor receives notice from a consumer of an alleged billing error in the consumer's credit card account.'" *Hayes v. Shelby Cnty*. 971 F. Supp. 2d 717, 729 (W.D. Tenn. 2013) (quoting *Burnstein v. Saks Fifth Avenue & Co.*, 208 F. Supp. 2d 765, 772 (E.D. Mich. 2002)). "In order for a creditor's duties to be triggered under the FCBA, 'the consumer must provide the requisite written notice of a billing error.'" *Id*. (quoting *Burnstein*, 208 F. Supp. 2d at 772).

Capital One argues that Lu "does not allege any 'billing error'" on Capital One's part as the Act defines it. Doc. 18, at 6. The Fair Credit Billing

Act defines a *billing error* as any of the following:

> (1) A reflection on a statement of an extension of credit which was not made to the obligor or, if made, was not in the amount reflected on such statement.
>
> (2) A reflection on a statement of an extension of credit for which the obligor requests additional clarification including documentary evidence thereof.
>
> (3) A reflection on a statement of goods or services not accepted by the obligor or his designee or not delivered to the obligor or his designee in accordance with the agreement made at the time of a transaction.
>
> (4) The creditor's failure to reflect properly on a statement a payment made by the obligor or a credit issued to the obligor.
>
> (5) A computation error or similar error of an accounting nature of the creditor on a statement.
>
> (6) Failure to transmit the statement required under section 1637(b) of this title to the last address of the obligor which has been disclosed to the creditor, unless that address was furnished less than twenty days before the end of the billing cycle for which the statement is required.
>
> (7) Any other error described in regulations of the Bureau.

15 U.S.C. § 1666(b).

Lu asserts that Capital One's *billing error* falls under § 1666(b)(3) regarding "non-delivery or non-acceptance." Doc. 19, at 1, 3. Capital One argues that "[t]he commentary to the FCBA's implementing regulations clarifies that a 'billing error' 'does not apply to a dispute relating to the quality

of property or services that the consumer accepts.'" Doc. 18, at 7 (quoting 12 C.F.R. § Pt. 226, Supp. I, Subpt. B). And because the *billing error* in this case "relates solely to the quality of product purchased rather than a miscalculation or other error on a billing statement," Capital one reasons, Lu "fails to allege a *billing error* for purposes of the FCBA." *Id.*; Doc. 24, at 1–2.

But the commentary to the implementing regulation, on which Capital One relies, states, in full:

> Section 226.13(a)(3) does not apply to a dispute relating to the quality of property or services *that the consumer accepts. Whether acceptance occurred is determined by state or other applicable law.*

12 C.F.R. Part 226 Supp. I—Part II of VII, § 226.13(a)(3)(1)(ii) (emphasis added); *see also Rigby v. FIA Card Servs., N.A.*, 490 F. App'x 230, 235 (11th Cir. 2012) (reversing the district court's order dismissing the case because, accepting the facts in the complaint as true and looking to state law to determine whether the party accepted the goods at issue, the plaintiff had sufficiently alleged an FCBA claim).

Ohio law provides that a buyer accepts goods when:

> (1) after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their non-conformity; or
>
> (2) fails to make an effective rejection as provided in division (A) of section 1302.61 of the Revised Code, but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them; or

> (3) does any act inconsistent with the seller's ownership; but if such act is wrongful as against the seller it is an acceptance only if ratified by him.

Ohio Rev. Code § 1302.64(A). In the Complaint, Lu alleges that when he first turned on the computer it failed to work properly, "displaying no image whatsoever." Doc. 1-1, at 5, ¶11. The same day he contacted HP for advice, *id*. at ¶12, and later wrote to HP complaining about the defective computer and requesting a replacement, *id*. at 6, ¶14; *id*. at 18. These factual allegations are sufficient to allege that Lu did not accept the computer after having inspected it. There are no additional allegations in the Complaint or the proposed First Amended Complaint that would indicate a different finding under Ohio law regarding Lu's acceptance, and Capital One has not argued so.

Taking the facts in the complaint as true, as the Court must do at this stage, *see Barber*, 31 F.4th at 386, Capital One has not shown that Lu failed to allege a *billing error* that could serve as the basis for a Fair Credit Billing Act claim against it.

### b. Capital One has not shown that all of Lu's allegations are time-barred

Next, Capital One argues that Lu's Fair Credit Billing Act claim is barred by the one-year statute of limitations. Doc. 18, at 4–5.

The Fair Credit Billing Act imposes a one-year statute of limitations on claims, which means that a lawsuit must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e); *see Wielicki v. Patient First*, No. 1:08-cv-609, 2009 WL 10722448, at *5 (N.D. Ohio Feb. 12,

12

2009). Capital One asserts that a violation of the Act "occurs either (a) 31 days after the creditor received notice of the billing error and failed to properly respond, or (b) 91 days after notice if the creditor failed to resolve the dispute." Doc. 18, at 5 (citing *Wielicki*, 2009 WL 10722448, at *5, in turn citing *Burnstein v. Saks Fifth Ave. & Co.*, 208 F. Supp. 2d 765, 776 (E.D. Mich. 2002)).

It is true that a section 1666(a) violation "occurs 31 days after a creditor receives a notice of a claimed billing error and fails to respond properly to that notice or 91 days after notice if the creditor fails to resolve the billing dispute." *Wielicki*, 2009 WL 10722448, at *5; *see* 15 U.S.C. 1666(a). Lu's first two alleged violations—that Capital One "[f]ail[ed] to conduct a reasonable investigation of [Lu's] billing dispute as evidenced by its disregard of HP's own admission of the product defect" and "[m]a[de] a demonstrably false determination that the 'goods were as described and received in good condition,'" Doc. 1-1, at 9, ¶ 38(a),(b)—fit squarely within § 1666(a)'s 31-day and 91-day violation-occurrence date.[5] The Complaint does not say when Lu notified Capital One that he disputed the charge. But after Lu notified Capital One that he was disputing the charge, Capital One sent a letter to Lu dated July 20, 2023, stating that the "goods were as described and received in good condition" and that it was "reapplying the charge to [Lu's] account." Doc. 1-1, at 24. So the latest date that Capital One could have received notice of Lu's dispute and the

---

[5]     Section 1666(a) lists 30-day and 90-day dates by which time the creditor must act, so any violation would occur on the 31st and 91st day. *See Wielicki*, 2009 WL 10722448, at *5.

13

date that it allegedly failed to resolve the dispute was July 20, 2023. Applying the more generous statutory accrual date, the limitations period began to run 91 days later, on October 19, 2023. Because Lu didn't file his Complaint until April 3, 2025, Doc. 1-1, at 4, Lu's Fair Credit Billing Act claim based on these two § 1666(a) violations is time-barred.

But Lu alleged more than just a section 1666(a) violation. Lu in his Complaint alleges that Capital One violated section 1666 in these additional, following ways:

> c. Continuing to attempt to collect the disputed amount during the dispute resolution period;
>
> d. Charging interest and late fees on the disputed amount in direct violation of the statute;
>
> e. Reporting negative information to credit reporting agencies during the pendency of the dispute;
>
> f. Failing to provide a written explanation that reasonably addresses the specific dispute raised by Plaintiff; and
>
> g. Filing a lawsuit through its agent Lyons, Doughty & Veldhuis, P. C. to collect the disputed debt while the dispute was still pending, in direct violation of 15 U. S. C. § 1666(c), which prohibits collection actions on disputed amount s until the creditor has complied with all FCBA requirements.

Doc. 1-1, at 9, ¶38. Each of these discrete allegations require the Court to discern the relevant limitations triggering date. *See, e.g., Burnstein*, 208 F. Supp. 2d at 777 (evaluating each discrete § 1666 violation, finding that some

14

were time-barred and some were not). And Capital One has not explained how Lu's allegations listed above are time-barred.

For instance, Lu's allegation that Capital One "[r]eport[ed] negative information to credit reporting agencies during the pendency of the dispute," Doc. 1-1, at 9, ¶38(e), alleges a violation of section 1666a. *See* 15 U.S.C. § 1666a(a) ("Reports by creditor on obligor's failure to pay amount regarded as billing error"). This alleged violation would have occurred when Capital One reported the negative information. *See Burnstein*, 208 F. Supp. 2d at 776 ("Plainly, such [§ 1666a(a)] violations would occur, and a right of action would accrue, on the dates that Defendant took these actions, and Plaintiff would have a year from those dates to bring a suit based on these violations."). Lu's Complaint does not state when Capital One reported the information, and Capital One does not address this allegation. *See id*. at 777 (finding that "the record lacks sufficient detail to ascertain precisely when such alleged violations [of § 1666a(a)] might have occurred," and concluding that "the Court cannot determine as a matter of law whether any claims arising from such occurrences would be time-barred."). Lu's allegation that Capital One "[f]il[ed] a lawsuit through its agent Lyons, Doughty & Veldhuis, P. C. to collect the disputed debt while the dispute was still pending," Doc. 1-1, at 9, ¶38(g), would also accrue on the date that Capital One took such action. *See Burnstein*, 208 F. Supp. 2d at 776 (finding that one alleged FCBA violation for filing a collection action was time-barred but another alleged violation was not;

"another collection effort was commenced in the fall of 2000, …. A claim arising from this alleged violation would not be time-barred.). Capital One does not address this alleged violation, either. Lu alleges in his Complaint that Capital One filed a lawsuit against him in October 2024. Doc. 1-1, at 7, ¶25. Lu's April 2025 Complaint is therefore within the one-year time period for this alleged violation.

Simply put, Capital One only cites the 31-day and 91-day accrual dates for a § 1666(a) violation without addressing Lu's discrete alleged violations in the Complaint. So it has not shown that all of Lu's alleged Fair Credit Billing Act violations are time-barred.[6] *See also Burnstein*, 208 F. Supp. 2d at 777 n.19 ("In fact, it is not clear whether Defendant seeks to challenge the timeliness of Plaintiff's claims arising from Defendant's collection efforts and reports to credit bureaus. It appears that Defendant's motion is limited to the claimed violations of the 30–day and 90–day requirements of § 1666(a).").

### c. Tolling principles and the continuing-violations theory would not toll the § 1666(a) limitations periods

In his opposition brief, Lu generally asserts that his § 1666(a) violations should not be dismissed as time-barred because of "tolling/continuing-violation issues." Doc. 19, at 4. But Lu hasn't described why he should be entitled to equitable tolling. *See, e.g., Thielen v. GMAC Mortg. Corp.*, 671 F. Supp. 2d 947, 954 (E.D. Mich. 2009) ("Plaintiffs do not present any arguments nor explain

---

[6]     Capital One cites the *Burnstein* case in its motion brief, Doc. 18, at 4–5, so it should have been aware of this issue and that court's ruling.

16

why the facts of this case should receive the benefit of equitable tolling. Plaintiffs do not allege any wrongful concealment on the part of Defendant, or due diligence on their part, to require the Court to toll the statutory period."). Lu's "conclusory allegation regarding equitable tolling is insufficient to warrant that relief." *See id.* And the continuing-violation theory does not apply to § 1666(a) claims. *See Burnstein*, 208 F. Supp. 2d at 776 (finding that the continuing-violation theory does not apply to § 1666(a) claims and citing *Steimel v. Trans Union Corp.*, 1988 WL 46247 (E.D. Pa. May 10, 1988)).

In sum, Capital One has shown that Lu's first two allegations describing § 1666(a) violations are time barred. Capital One's Motion is therefore granted as to these two alleged violations, Doc. 1-1, at 9, ¶38(a),(b), and Lu's Motion for leave to amend his complaint to continue to assert these violations is denied. Capital One has not shown that Lu's remaining five allegations are time-barred, so Capital One's Motion is denied as to these five allegations, Doc. 1-1, at 9, ¶38(c)–(g), and Lu's Motion to amend is granted as to these allegations.

*4. Capital One has not shown that Lu's Truth in Lending Act claim is time-barred*

In count four, Lu alleges that Capital One violated the Truth in Lending Act, 15 U.S.C. § 1601 *et seq*. Doc. 1-1, at 7. Capital One asserts that Truth in Lending Act claims "are subject to a one-year statute of limitations." Doc. 18, at 8 (citing 15 U.S.C. § 1640(e)). It submits that "time begins accruing for the purposes of the statute of limitations on the date of the alleged violation of TILA, 'which occurs when a creditor fails to make TILA's required disclosures

prior to the consummation of the transaction.'" *Id.* (citing *Girgis v. Countrywide Home Loans, Inc.*, 733 F. Supp. 2d 835, 844 (N.D. Ohio 2010)). "In other words," Capital One contends, "the statute of limitations begins to run 'when lender and borrower contract for the extension of credit.'" *Id.* (citing *Girgis*, in turn quoting *Gates v. Ohio Savings Bank Ass'n*, 2007 WL 2713897 at *3 (N.D. Ohio Sept. 17, 2007)). And because Lu used his Capital One credit card in May 2023 to buy the allegedly defective computer, Capital One submits that the limitations period began on that date, at the latest, and is time-barred.

But the two cases that Capital One cites involved mortgages and relied on *Wachtel v. West*, 476 F.2d 1062 (6th Cir. 1973), also a case involving a mortgage. *See Wachtel,* 476 F.2d at 1063; *Girgis*, 733 F. Supp. 2d at 841, 844; *Gates*, 2007 WL 2713897, at *1, 3. This distinction matters because mortgage transactions are generally what's called "closed-end credit." *See, e.g., Stern v. Rocket Mortg., LLC*, 666 F. Supp. 3d 234, 241 (E.D.N.Y. 2023) ("[A] closed-end credit transaction is one where the finance charge is divided into the term of the loan and incorporated into time payments, and includes a completed loan such as a mortgage or car loan."). But the type of credit Lu received from Capital One is what's called "open-end credit." *See* 15 U.S.C. § 1602(j) ("The terms 'open end credit plan' and 'open end consumer credit plan' mean a plan under which the creditor reasonably contemplates repeated transactions, which prescribes the terms of such transactions, and which provides for a finance charge which may be computed from time to time on the outstanding

18

unpaid balance."). And the statute of limitations for these two types of cases may start running at different times. *See, e.g., Corrigan v. First Horizon Home Loan Corp.*, No. 09-12721, 2010 WL 728780, at *3 (E.D. Mich. Feb. 25, 2010) ("the 'date of the occurrence of the [TILA] violation' can differ depending on the type of consumer credit transaction at issue"). Indeed, in *Raney v. First Nat. Bank of Nebraska, Inc.*, No. 06-8, 2006 WL 2588105, at *1 (E.D. Ky. Sept. 8, 2006), the defendants had moved to dismiss the plaintiff's Truth in Lending Act claims as time-barred. The court observed:

> In this case, Plaintiffs' had an open-ended credit arrangement with FNB Omaha, rather than the closed-end arrangement in *Wachtel*. This distinction is a significant one which dictates a different result than the one reached in *Wachtel*. A survey of Sixth Circuit case law post-*Wachtel* reveals no … TILA cases which involve open-ended credit arrangements like the one herein.

*Id.* at *4 (footnote omitted). The court in *Raney* concluded that the limitations period in § 1640(e) "is not measured from the date on which the disclosure was required by law to be made, but instead from the date on which a finance charge was first imposed."[7] *Id.* at *5.

In his opposition brief, Lu points out that his credit card with Capital One was "for open-end credit." Doc. 19, at 3. And in his Complaint, he alleges

---

[7]     *Raney* relied on *Goldman v. First Nat. Bank of Chicago*, 532 F.2d 10, 16–22 (7th Cir. 1976). *See also Corrigan*, 2010 WL 728780, at *3–5 (discussing *Goldman*). In *Goldman*, the Seventh Circuit held that the statute of limitations for a Truth in Lending Act claim involving open-ended credit begins to run when a finance charge is imposed if the plaintiff alleges that disclosures were not made. 532 F.2d at 21.

that Capital One "[f]ailed to provide accurate information regarding [Lu's] rights under TILA and the FCBA" and improperly assessed finance charges and late fees on disputed amounts. Doc. 1-1, at 10, ¶50(b). In other words, Lu has alleged a claim which, like the claim in *Raney*, is subject to a different limitations start-date. And because the Complaint doesn't provide the date that the finance charge was assessed, it's not possible to tell when the limitations period would have begun to run.

Capital One has not addressed Lu's specific allegations, his responsive brief pointing out the open-end-credit nature of the Capital One credit card, or the distinction between open-ended and closed-ended credit limitations periods. Doc. 24, at 2. Capital One has not shown that Lu's Truth in Lending claims are time-barred, and its Motion for judgment on the pleadings on these claims is therefore denied. *See, e.g., Campbell v. Grand Trunk W. R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001) ("Because the statute of limitations is an affirmative defense, the burden is on the defendant to show that the statute of limitations has run."). Lu's Motion for leave to file First Amended Complaint retaining these claims is granted.

**Conclusion**

For all of the reasons explained above, Defendant Capital One's Motion for Judgment on the Pleadings, Doc. 18, is granted in part and denied in part. Lu's Motion for Leave to file a First Amended Complaint, Doc. 23, is granted in part and denied in part. This case will proceed on Lu's First Amended

20

Complaint against Capital One on count two, the Fair Credit Billing Act claims, Doc. 23-1, at 8, ¶38 (c)–(g), and on count four, the Truth in Lending Act claims, Doc. 23-1, at 9–10.

By September 19, 2025, Lu is to file on the docket a revised version of his First Amended Complaint, omitting counts one and five and the first two alleged violations in count two, Doc. 23-1, at 8, ¶38 (a),(b).

So ordered.

Dated: September 12, 2025

*/s/ James E. Grimes Jr.*
James E. Grimes Jr.
U.S. Magistrate Judge