IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| HONG CHRIS LU, | CASE NO. 1:25-cv-1057 |
| Plaintiff, | |
| vs. | MAGISTRATE JUDGE |
| | JAMES E. GRIMES JR. |
| CAPITAL ONE, N.A., *et al.*, | |
| Defendants. | **MEMORANDUM OPINION AND ORDER** |

On March 6, 2026, the Court issued an Order to Show Cause requiring pro se Plaintiff Hong Chris Lu to explain why he failed to appear for the Court's status conference. Doc. 80. Lu failed to respond to the Show Cause Order. He hasn't submitted any other filing to the Court or contacted the Court. For the following reasons, the Court dismisses under Federal Rule of Civil Procedure 41(b) Lu's Amended Complaint, with prejudice.

**Relevant background facts**

In April 2025, Lu filed in Garfield Heights Municipal Court a five-count complaint against Defendant Capital One, N.A., and Defendant HP Inc. Doc. 1-1. Lu alleged that he purchased a defective computer from HP using a Capital One credit card. *Id.* Lu alleged violations of the Ohio Consumer Sales Practices Act, the Fair Credit Billing Act, the Truth in Lending Act, the Fair Debt Collection Practices Act, and a breach of warranty claim. Doc. 1-1, at 7–

11. Capital One removed the case to federal court, Doc. 1, and the parties consented to my jurisdiction, Doc. 13.

In August 2025, I held a conference and set case management dates. Docs. 14, 15. Shortly thereafter, Capital One filed a Motion for Judgment on the pleadings, which Lu opposed. Docs. 18, 19. I granted in part and denied in part Capital One's motion, and instructed Lu to file an amended complaint omitting the dismissed claims. Doc. 28. Lu promptly filed an Amended Complaint dismissing those claims. Doc. 29. He also added facts clarifying that although Lu purchased the computer using his credit card, Lu bought the computer for his adult son, Michael. *Id*. at 2–3. And it was Michael who communicated with HP's technical support personnel regarding the alleged defectiveness of the computer, and Michael who "assist[ed]" Lu with written communications to HP's CEO. *Id*. at 3.

So far, so good. But things started going downhill quickly after that. Lu filed a "Emergency Motion for Court Supervision of Discovery and Rule 37 Sanctions" against Capital One, Doc. 30, which, I explained to Lu in a contemporaneous status conference, was not in compliance with the Court's standing order regarding discovery and sanction motions, Doc. 36. Lu then filed, in opposition to Capital One's dismissal motion, a brief which contained numerous fake cases and other troubling citation inconsistencies. Doc. 39. After Capital One pointed this out, Doc. 41, at 2, Lu submitted *another* filing with fake cases, Doc. 43. The Court issued a show cause order to Lu, *non-*

2

*document Order* (filed October 22, 2025), and Lu apologized and withdrew or corrected his filings, Doc. 47.

That same month, problems between Lu and HP began to surface. HP had asked for inspection of the allegedly defective computer that Lu purchased from HP, Doc. 50, but Lu refused to produce the computer for inspection, Doc. 51. The Court held a conference on October 29 and ruled that Lu must produce the computer for inspection. Doc. 52, at 1–2. The parties agreed that HP's counsel would pick up the computer from Lu's residence on November 3. *Id.* On October 29, Lu filed on the docket a "Notice regarding compliance" with the Court's Minute Order, "confirm[ing] that HP would inspect the computer "onsite at [Lu's] residence" and that the inspection would be performed under a "non-destructive, no-alteration protocol" drafted by Lu. Doc. 53. The Court struck Lu's Notice because it "misconstrue[d] the Court's Order and suggest[ed] that Lu d[id] not currently intend to comply with the order." Doc. 54. The Court wrote:

> This Court has ordered that Lu must turn over the allegedly defective computer in the time and manner directed during the status conference. *See* Doc. 52. Lu is hereby warned that if he fails to comply in full with the Court's Order, the Court will invite HP to request sanctions against Lu for his failure to comply. Lu is warned that possible sanctions include the dismissal of his lawsuit. *See* Fed. R. Civ. P. 37(b) & (d). Furthermore, Lu is not permitted to submit additional filings attempting to modify his obligation to produce the computer or HP's ability to inspect it.

Doc. 54, at 2 (emphasis removed). Lu asked the Court to stay its ruling on the

3

inspection, Doc. 58, and *again* attempted to limit HP's ability to inspect the computer, Doc. 57. The Court denied these motions. *Non-document order* (filed October 31, 2025). On November 3, HP's counsel picked up the computer from Lu's residence without incident.

On November 11, Lu informed the Court that during the October 29 status conference he experienced hypertension symptoms, and that on November 4 he "sought medical care for the first time in approximately 10 years because the symptoms." Doc. 63-1.

At a status conference in December, HP advised the Court that "the Bitlocker feature on the computer has been activated, requiring the technician to use a pin or passcode to access the computer." Doc. 67. The Court "advised the parties to discuss this issue, including Lu speaking to his son Michael to obtain the pin or passcode so that HP can access the computer."[1] *Id.* Nine days later, Lu accused HP of "apparent tampering" of the computer and "filed criminal referrals with three law enforcement agencies." Doc. 68. He also filed a "Motion for spoliation sanctions and adverse inference" against HP, Doc. 69, which the Court summarily denied for non-compliance with the Court's Standing Order. *See non-document order* (filed January 8, 2016) ("This is the second time the Court has denied a motion Lu has filed for non-compliance with its Standing Order."). The Court warned Lu that "if he continues to file

---

[1]    More than a month later, HP advised the Court that Lu "refused to answer whether he inquired with his son, Michael Lu, about obtaining the pin or passcode for the computer." Doc. 71, at 1.

4

non-compliant motions or any other unwarranted filings, the Court may revoke his electronic filing privileges."[2] *Id.* (citing Northern District of Ohio Electronic Filing Policies and Procedures Manual, p.2).

Next, Lu sought to dictate how HP deposed him. Doc. 70. Due to his high blood pressure, Lu told HP to take his deposition by Zoom. *Id.* at 1. He insisted that his family be present in the room with him during his deposition, reasoning that his son "had to accompany [Lu] and assist in communicating with [medical] providers." *Id.* at 6. HP opposed Lu's requests,[3] but offered a compromise:  HP would conduct the deposition at Lu's home, with a three-hour limit per day. Doc. 71, at 2. Lu could wear "a blood pressure cuff or other monitor in the deposition room/during the deposition," and a family member could "wait[] outside of the deposition room for any necessary medical assistance." *Id.* Lu rejected HP's compromise. *Id.*

---

[2]     Lu requested, and was granted, electronic filing privileges, Doc. 7, *non-document order* (filed July 3, 2025), which also acts as a consent to receive electronic notices of filings through the Court's CM/ECF system. *See* Application for Electronic Filing or Read Only CM/ECF Account (available at https://www.ohnd.uscourts.gov/pro-se-information).

[3]     HP cited the following reasons: it may call Lu's son Michael as a witness; it needed to ensure that Lu would not be "coached" during his deposition; "intermittent technical difficulties with using Zoom" that HP encountered during meet-and-confers with Lu, including one conference that was converted to audio-only; Lu's history of reading statements at Court hearings and when conferring with counsel via zoom, rather than responding impromptu; Lu's apparent reliance on generative AI; and the fact that HP's inspection of the allegedly defective computer indicated that it "has been in use and has a Microsoft account active on the computer." Doc. 71, at 6.

The Court ordered the deposition to proceed on January 13 according to HP's suggested compromise. Doc. 72. I warned Lu that "his failure to follow these orders may result in sanctions, including the dismissal with prejudice of this lawsuit." *Id*. at 2 (citing Fed.R.Civ.P. 37(d)(1)(A)(i)) (indicating that the court may sanction a party who fails to appear for his deposition). The Court wrote:

> I note that this marks the second time that this Court has had to intervene in the discovery process due to Lu's unreasonable attempts to thwart HP's reasonable attempts to conduct the discovery necessary to defend itself in this lawsuit. *See* Doc. 54; Order, 10/31/2025. It is also the third time that this Court has warned Lu that his failure to comply with the Court's orders may result in the dismissal of his lawsuit. *See* Doc. 54; Order, 10/31/2025. The Court notes Lu's increasingly obstructive behavior in this case, which has been documented in Court orders, *see* Doc. 54, and is evidenced by Lu's filings on the docket in which he attempts to modify or negotiate his duty to comply with Court orders, *see, e.g.*, Order, 10/31/2025. Such continued actions will not be tolerated.

*Id*. at 3.

On January 15, 2026, HP sought a 32-day extension of the fact discovery cutoff date. Doc. 73. HP advised the Court that on January 13, the parties "were able to get only one hour on the record, due to both significant technical issues related to a large radio tower in close proximity to Mr. Lu's home (which interfered with audio recording and the court reporter's stenography machine) and Mr. Lu's high blood pressure." *Id*. at 1. "[I]mmediately upon resuming the deposition on January 14," Lu "took his blood pressure, which was extremely

6

high"; consulted his doctor; and was "advised to call 911 and to go to the emergency room." *Id.* HP stopped the deposition and canceled the next-day's deposition. *Id.* The Court granted HP's request for more time and ordered HP to file a status report by February 16 updating the Court. *Non-document order* (filed January 16, 2026). On February 13, HP filed a status report, stating that it twice tried to contact Lu but that Lu had not responded to HP's efforts to contact him.[4] Doc. 75. I therefore set a video status conference for March 6, 2026. I instructed HP to "be prepared to discuss whether the information it seeks through Lu's deposition might be obtained from other sources" and instructed Lu to "be prepared to explain why he has not responded to counsel's attempts to reschedule his deposition." *Non-document orders* (filed February 18 & 20, 2026).

Lu did not appear for the videoconference. I ordered Lu to show cause by March 20, 2026 "as to why he failed to appear for the Court's status conference" and "warned [him] that his failure to respond to this Show Cause Order may result in sanctions, including the dismissal with prejudice of his lawsuit." Doc. 80, at 2. I also ordered the Clerk's Office to mail a copy of the Show Cause Order to Lu at his home address. *Id.* Lu has not filed a response or contacted the Court.

---

[4] HP also reiterated its intention to seek under the Ohio Consumer Sales Practices Act and Federal Rule of Civil Procedure 11 attorneys' fees and costs, based on "[p]reliminary evidence [that] still suggests that Plaintiff brought and maintains this lawsuit in bad faith." Doc. 75, at 2; *see* Doc. 71.

## Law and Analysis

Federal Rule of Civil Procedure 41(b) permits the involuntary dismissal of a complaint where the plaintiff fails to prosecute, comply with the Federal Rules of Civil Procedure, or comply with a Court Order. *See* Fed. R. Civ. P. 41(b). Dismissal under Rule 41(b) "operates as an adjudication on the merits." *Id*. Although Rule 41(b) references a court action on a dismissal motion filed by a defendant, the Supreme Court has long held that district courts have "the inherent power to dismiss a case *sua sponte* for failure to prosecute." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 49 (1991); *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31 (1962)).

The Sixth Circuit has articulated four factors that a district court should weigh when considering whether to dismiss an action under Rule 41(b). They are:

> (1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered.

*Schafer v. City of Defiance Police Dept.*, 529 F.3d 731, 737 (6th Cir. 2008) (quoting *Knoll v. Am. Tel. & Tel. Co.*, 176 F.3d 359, 363 (6th Cir. 1999)). "Although typically none of the factors is outcome dispositive, it is said that a case is properly dismissed by the district court where there is a clear record of

8

delay or contumacious conduct." *Knoll*, 176 F.3d at 363 (citing *Carter v. City of Memphi*s, 636 F.2d 159, 161 (6th Cir. 1980)).

For the first factor, a plaintiff demonstrates willfulness, bad faith, or fault when his or her conduct displays "either an intent to thwart judicial proceedings or a reckless disregard for the effect of his conduct on those proceedings." *Schafer*, 529 F.3d at 737 (quoting *Wu v. T.W. Wang, Inc.*, 420 F.3d 641, 643 (6th Cir. 2005)). For over two months, Lu has not responded to HP's communications. This prompted the Court to set a video status conference, which Lu did not attend. Neither Lu nor a family member[5] has communicated to the Court in any way. Lu has thus shown a reckless disregard for the effect of his conduct on these proceedings.

As to the third factor, I warned Lu that his failure to respond to the Show Cause Order may result in the Court dismissing his lawsuit. Doc. 80, at 2. In fact, this was the *fourth time* I warned Lu that his failure to participate in this case may result in sanctions, including dismissal of his lawsuit. *See also* Doc. 54, at 2; *non-document order* (filed October 31, 2025); Doc. 72, at 2. And less drastic sanctions, the fourth factor, are not an option because there is nothing more the Court can do. The case cannot proceed if Lu doesn't participate in this lawsuit by responding to Court Orders, communicating with

---

[5] Because Lu has electronic filing privileges, he received court documents electronically. So I ordered the Clerk's Office to also mail Lu a copy of my show cause order.

9

the defendants, and having his deposition taken. These factors weigh against Lu.

Finally, as to the second factor, the defendants have been prejudiced by Lu's failure to participate in this case. HP has not been able to complete its discovery, which it must do to defend itself in this lawsuit. While Lu actively resisted HP's attempts to inspect the computer and sit for a deposition, his case against Capital One stalled. And although Lu's hypertension warranted some reasonable accommodations, which HP suggested and I ordered, the case cannot be stayed indefinitely—and certainly not without input from Lu. All of the Rule 41(b) dismissal factors weigh against Lu.

Because there has been on Lu's part a "clear record of delay or contumacious conduct," *Knoll*, 176 F.3d at 363, dismissal with prejudice of Lu's Amended Complaint is warranted.

## Conclusion

For all of the reasons stated above, Lu's Amended Complaint against Defendants HP and Capital One is dismissed, with prejudice.

So ordered.


Dated: March 25, 2026

 */s/ James E. Grimes Jr.*
James E. Grimes Jr.
U.S. Magistrate Judge

10